Good morning. Justice Canby, Presiding Justice Thomas, and Judge Conlon, and welcome Judge Conlon to sunny California. I am Stephen Young, I'm a partner in Freeman, Freeman & Smiley. And I was just formally substituted into this case yesterday for purposes of presenting this oral argument. I think I must have a sense now of what it must feel like for a relief pitcher in a professional baseball team, having just been traded to a new team, to be asked to go in in the ninth inning with his new team behind and try and save the game. So I'm going to do that. I'll make your pitch. I'm going to do that, thank you. The key issue on this appeal is whether endorsement number four to the insurance policy and the other pertinent documents, such as the Bill of Lading, conferred third-party beneficiary status upon the appellant sentenced studio. If so, then the appellant does and did have standing to sue the appellee's security insurance, and if not, the lower court decision was correct. What really is the task of this panel is to decide whether what was before the district court, and bearing in mind the law's very strong policy, favoring having claims heard on their merits and resolving doubts in favor of the party opposing a motion for summary judgment, the issue is whether the district court was correct in including that there was no evidence before which, when analyzed in the light of the proper interpretation of the applicable law, supports its conclusion that appellant could not and cannot, as a matter of law, maintain a cause of action against the appellee for breach of the covenant of good faith and fair dealing of the insurance policy. Well, there really aren't any disputed facts, are there? They're not. It's not so much the facts that are in dispute, Your Honors. I think it was a failure, respectfully, of District Court Judge Wilson to appreciate the import and the way these facts tie together. I think that's really what the circumstances of the error was. Yes. I guess what I was driving at is there's no genuine issue of fact in the classic sense that we're talking about. That is correct. That is absolutely correct. What you're disputing is his application of law to the undisputed facts. Right, and perhaps a misperception or a misunderstanding of how the various documents fit together like pieces of a jigsaw puzzle to create a different puzzle picture than one he saw. Well, don't you think, though, if we allow your claim to go forward, that really we're third-party actions concerning the covenant of good faith and fair dealing? No, I don't, Your Honor. I think that's a fair question, though, but I don't, and I don't for this reason. Because in this case, there's no question. It's a stipulated fact that it wasn't Curtis Movers that paid for the additional $500,000 of additional coverage per endorsement number four. I mean, they paid it, but they billed it through to Gold Circle. Gold Circle paid that, and in fact, the $700 add-on, which apparently was a profit to Curtis on that policy, Curtis didn't do this for itself. Curtis didn't come out of pocket with its own money to buy this additional coverage. And this additional general, you know, raising of their policy coverage, it was a specific raising with regard to specific property owned by sentients in the possession of Gold Circle to be moved on a day certain, and then in the storage. It wasn't a draw. Well, accepting what you say is true, why does that make a difference in terms of the And if there were a breach and the failure to investigate, those duties were owed to the named insured. I understand that, Your Honor, but what I'm saying is that No, I understand, but I mean, even though you paid for it, you really can't create insurance coverage by third-party agreement. You can't alter the coverage. The coverage is the coverage, regardless of who pays by any arrangement among third parties. You'd agree with that? In general, but that's not the only fact that we have here. Yes, but then you have to get over that hump and actually apply a duty, a direct duty, from the insurance company to your client, and that's a I think the direct duty actually would run, Your Honor, from the insurance company to Gold Circle, and by virtue of the assignment, which is also not in question, not in condition Well, there's no question about the assignment between Sentience and Full Circle, but you've got, the endorsement itself renders, is a promise by the insurer to reimburse Curtis for amounts they may become liable for, either for tort damage or contractual bill of lading, but the liability of the mover is what's being insured against, it seems to me. That's the hardest problem to get around. I think that is the problem in a nutshell, but I think the court did not really consider the reasonable expectation of the parties and the intention of the parties. It didn't have enough evidence, perhaps, to be clear on what that was, but in the ordinary circumstance, when one has, hires a, let's say a home mover to move their home, their residence, their contents from one place to another, you are asked would you like to insure it, and you are given the opportunity to pay money to the moving company for there to be coverage to cover your furniture and your household goods that are being moved, and the way it actually works is that the coverage is coverage for the moving company against your claims if they damage your materials in transit, but the expectation of the parties and certainly the buyer of that coverage is that they are going to have an ability to reach a fund that will protect them in the event that the moving company damages their goods in transit. It's not going, it's not expected, it's not thought of as being, well, I'm buying more protection for the moving company so that, you know, if I have a claim against the moving company, the moving company is going to be in a better position to respond to my claim. I mean, that's just not the normal expectation of the parties, nor the intent, and the problem that we have because this is being considered on an appeal from a motion for summary judgment in which the court kept saying there's no evidence and there's no evidence. Well, there were inferences to be drawn. There were inferences from what was before the court which legitimately could have been drawn, which weren't. Now, certainly the district court has the absolute right and ability to draw inferences from what is before it, but what I'm urging upon this court is that the wrong inferences were drawn and the pieces of the puzzle weren't put together in the right way. The fact is the bill of lading blank area did not have to be filled in at all, but it was. It had a value of $600,000 written in, and that bill of lading and that addition to it specifically, together with endorsement number four, which was paid for by Gold Circle without contest, specifically creates a picture of what at least Gold Circle's intentions and expectations were by buying this additional coverage. I mean, it is to the point of somewhat, and I don't mean in any way to be disrespectful to Judge Wilson. I've had cases before him. In fact, I will be before him tomorrow afternoon, but I think there was a gap in the logic to think that anyone would voluntarily pay money to a carrier so it could increase its coverage and solely for the benefit of the carrier. But those are the reasonable expectations of the shipper and the person to whom, the person entrusting the contents to the shipper. It has nothing to do with the reasonable expectations of the insured vis-a-vis the insurer, does it? In other words, you have to, before you, what was insured in this case was not contents insurance or property damages. What the insurance policy said is that we'll pay those sums which our shipper is legally obligated to pay. And that's the only sums that the shipper was legally obligated to pay occurred as a result of the suit, $30,000. Your Honor, I think there was both a liability portion of this policy and a property portion of the policy. I think that that is something that needs to be focused on. Because if all there was was just the liability portion, I wouldn't be addressing this court. No, but the easy thing to do is to say, and obviously sometimes in these circumstances the insured or you get endorsed on the policy. Well, I'm sure had anyone bothered to explain how this was going to work in the eyes of the insurance company, had they explained that to Gold Circle, it would not surprise me at all to have expected that Gold Circle would have insisted that both they and Sentience be added as additional insureds. But again, see, that has to do with the commercial and reasonable expectation of the parties in stepping up and giving more money to a carrier for the purchase of additional coverage. And it couldn't be more clear that that additional coverage was for this specific property to be moved on this specific date. If it looks like I'm looking at the bill of lading and it lists that $2,700 as a valuation charge. Correct. Is by putting a valuation charge in there, is there even a representation that they're going to buy insurance? I think that's, there's not a representation by that alone, no, but we know for a fact that they did. That's endorsement number four. I mean, it does fit together. Everything matches up. Maybe the moving company had the option of saying, okay, if you're going to declare a value of $600,000, we're taking a bigger risk and we're going to charge you more. And we've decided to self-insure. Well, you know, I think that's a reasonable thought process, certainly. I'm just not sure that it's justified by what was before, you know, which was very limited, which was before Judge Wilson below. Maybe that's what they did to an extent. Maybe they're saying, well, we'll insure for $500,000. We'll bear the risk of $100,000 and we'll charge $700 for the cost of that risk. Well, it could have been that, too. See, there's no way on the record that it was before Judge Wilson and, you know, maybe the fault of the process is that there wasn't as much evidence as there could have been and perhaps should have been, you know, with the benefit of 20-20 hindsight. But what was there before him, and all I'm arguing is that what was there before him and the reasonable inferences that could logically and rationally be drawn from what was before him could allow for a rational trier of fact upon presentation of all the evidence to conclude that there was an intention to enforce the rights against the carrier. And again, that's the context in which this case comes to this court is a grant of emotion for summary judgment. Well, there's a broader context, too, and I started talking about it, but maybe you could address it. I mean, California has taken such a hard stance against third-party, direct third-party suits against bad faith suits against insurance companies. Other states, including my own, have gone the other way. Maybe my own is the only, Montana allows direct action. You'd be just fine in Montana. But we're in California, and California says no third-party actions. You get an assignment of the first-party bad faith case or in some rare, rare circumstances when you're, there's, we'll allow a third-party beneficiary case. But I haven't seen a third-party beneficiary bad faith case go forward. Have you? I have to say no. No, there's not one. But I do think that this case does present some unique facts and circumstances. I do think it is closely analogous to the shade case. I know the appellee disagrees, but I think it is closely analogous, and I think that is a pretty pivotal case. You know, I think you're right. Historically, if we look at recent times and recent court decisions, you're 100 percent correct. It started off in a different direction. Right. And then California retrenched and said no third-party direct action. But that doesn't mean that in all facts and circumstances that that is the correct way that the law should be applied. I mean, I guess the legislature could come out and say flat out it doesn't matter what the facts or circumstances are ever, in any circumstance, in any claim, there will be no. And that's really not occurred. You know, yes, we certainly do have a strong line of cases. I realize I'm swimming and trying very hard to swim upstream on this. But I do think that this court has the opportunity on a de novo standard to reevaluate this in the light of the facts and circumstances known, the concept of reasonable expectations of the parties, and look at what it really has to focus on is, is it possible, is it conceivable that if all the evidence were allowed to come forth in a trial, would there be absolutely no chance, no way as a matter of law that this case in a plaintiff's position could prevail? And I think the answer to that is no. I'd like to reserve some time. Sure. Just a few minutes. Thank you. May it please the Court. Good morning. My name is David Tertaglio. I represent the APLE, the Security Insurance Company of Hartford. One of the key stipulated facts in the case is that the insured under the policy, Curtis Movers, denied liability for this property damage. And that points out the point Your Honors have made earlier, that this is liability coverage. The policy does have property damage coverage, but that's not an issue here. The issue is the coverage is for the name insured Curtis Movers' liability, if any. That's fundamentally different from the suggestion that this policy was intended to provide coverage for damage to this property. The property could be damaged, but Curtis Movers may not have liability. That's a legal issue that involves a variety of legal defenses, such as limits of liability that Curtis Movers may have. Endorsement four does make perfect sense. It increased the limit of liability coverage. It didn't convert the cargo, it's called cargo legal coverage. It didn't convert that into first-party coverage, such as in the Shade Food case, for example. There was a first-party policy that covered certain described scheduled property. In that case, it was called stock. In this case, whatever property was involved in this case is not scheduled. It's not part of the, within any form of the property coverage. What we have is exactly the situation in this case that the California Supreme Court has said is contrary to California law. We have the, our insured is sued and is afforded a defense, and simultaneously, the insured's adversary, the third-party claimant, sues the insurance company and says, you should, you're not handling this claim properly. You're liable for bad faith because we are some sort of a third-party beneficiary under this policy. This is flat contrary to California law. It's a good thing. Well, let's assume for the sake of argument that, in fact, you could, Mr. Young could show that they were an intended third-party beneficiary. Don't you think under those circumstances that California might recognize a third-party direct action against the insurer? I think it would not. It clearly would not because this is no different from any other situation, any other form of liability coverage. Automobile coverage, for example. You buy liability coverage, and it protects, it provides protection for the persons you crash into and persons you harm to whom you owe liability. So that person could have the same position to say, you bought that liability coverage. It was designed ultimately to protect me because I get the money. Yeah, so that's sort of the implications if you take it in one direction. But on the other hand, I think there are some cases in which you could argue that, in fact, that there was a specific third-party beneficiary in mind, and this may be one of them. Maybe the evidence isn't as strong. But if you establish the third party as a true third-party beneficiary situation of which the insurance company was aware, don't you think there's an argument to be made that if the insurance company ultimately owes a duty by the third-party status for payment, that there might be an implied covenant imposed on that duty? Well, in this case, there's no evidence that there was intended to be a third-party beneficiary because there's no evidence of an intent to provide property damage coverage for this property as opposed to increase the legal liability coverage for the insured. We've had discussions about the bill of lading. That's not part of the insurance contract. That's not part of any agreement that the insurance company was part of. Endorsement for, there was talk about Gold Circle purchased the policy. Gold Circle didn't buy anything. Curtis Movers did. Curtis Movers had as an endorsement that raises the legal liability limit for a particular job. Now, that's not to say that inherent in that somehow is a suggestion that we're going to provide property damage for this coverage independent of legal liability of the insured. That's a fundamentally different risk because the property could be damaged. For example, through no fault of the insured or beyond the contractual obligations of the insured, the property would still be damaged. That's not covered in this policy. It would be if there were property coverage because property coverage is not based on fault or liability. It's based on your own property. If it's covered property, if it's damaged by a covered cause of loss, there's coverage. The situation is a little different from your example of the automobile liability policy because you don't know who the victim is going to be when you have an automobile liability policy. And in this policy, you do know who the victim would be. Actually, you don't because the coverage is for Curtis Movers. Curtis Movers purchased the endorsement. It would cover Curtis Movers' liability to anyone. During that, I mean, it refers to the move. It refers to the move, but the legal liability is not limited to the persons involved in that move. It's Curtis Movers' general liability. Well, let's not go then, I mean, if we resolve that, that might be a factual issue, a factual dispute that might be resolved. I think Mr. Young's argument would probably be, look, although the facts are relatively undisputed, the jury ought to decide, properly instructed, whether a third-party beneficiary status was, in fact, created. And if that is the case, then I suppose I could go forward on the covenant. And I would submit that there is no evidence whatsoever that a jury could conclude that there was an intent by the parties, Curtis and this insurance company, to provide property damage coverage for this move, as opposed to providing liability coverage for legal liability resulting from this move. And, in fact, the record shows that the insurance company fulfilled that bargain. It's defended Curtis Movers, paid the settlement, paid the judgment, and statutory settlement offer. That case is over, and now here this case is going on, contrary to the established law of California. Thank you. Any further questions? Good. Thanks. Thank you. Thank you for the opportunity to address the Court one more time. With all due respect to the carrier's position, I think there's a certain amount of sophistry that's being engaged in to say, well, it's a liability policy. It isn't to protect the property. The property is specifically referenced in the policy itself. Clause A of the insuring agreement created the obligation on the part of the carrier that, in addition to providing defense coverage to defending against any claims, to also pay money that Curtis was obliged for because of loss or damage to the property, which was being moved and stored. It talks about the misdelivery or damage or loss to the shipper's property. Well, the shipper is clearly gold circle. That's very, very clear in the Bill of Lading. You know, the idea is to create a fund that there is an ability to recover from without having to chase Curtis around for assets. And I think it's also inaccurate to say that this endorsement number four just gave Curtis that much more general liability coverage. Absolutely did not. It was specific to the property that was going to be moved on that specific date certain in August of 2001. It was specific to the property that was reflected in the Bill of Lading. Curtis didn't just decide, you know, instead of having a $100,000 policy or a $250,000 policy, to have a larger policy in general. It was decided that, you know, our client wanted to have coverage. They had a valuable group of equipment, $600,000 worth. There was an ability to obtain more insurance for it at a cost. But at the end, the insurance kicks in only if the mover is legally obligated to pay the sums to you or contractually obligated to pay the sums to you. Correct. And the state courts are through. You have filed suit in state court. You had a settlement. And that resolved that issue, didn't it? I think, you know, Your Honor, it resolved it in part. You know, if there is a separate liability that the carrier has, which is what's before this court, to Sentience or at least to Gold Circle, then I think it doesn't resolve that. And the fact that there was a resolution of the direct state court suit against Curtis doesn't mean that Sentience Studio received all that it should have. As a result of the actions, it means that a case was resolved on a 998 settlement. It doesn't mean that there's no independent right of action. And it doesn't mean that Sentience was fully compensated for its loss, which it claims was caused by the negligence of Curtis. Well, are you saying that you think via a third-party action you can obtain compensation, just straight compensation for damage to the property that wasn't resolved in the state court? I mean, the idea of the violation of the covenant is they should have settled earlier, they didn't investigate, you should have been paid earlier. But you have a fixed amount of $30,000, don't you? I think that goes together, Your Honor. I think there is the whole idea behind insurance is to compensate for loss. Right. But if the loss is determined to be $30,000, your only argument on the covenant is they didn't pay it early enough, right? Yes. But the loss wasn't determined to be $30,000. The loss was compromised through a 998 proceeding as $30,000 in a direct suit. That doesn't mean that the loss was only $30,000. No, probably not. But I think for the purpose of bad faith, you may be stuck with a $30,000 damage resolution. I mean, normally what happens in these cases, if my recollection serves me right, is you settle with the insured as a third party. The insured paid X number of dollars, give you an assignment of the bad faith case, or you take a judgment against the insured for a large amount of money, and you have a covenant not to execute, and you take assignment of the bad faith case. This is a little different, I have to say. It really is. Because it just seems to me if your client, and you weren't involved at all, wanted to preserve your bad faith suit, you would have handled the settlement a lot differently. Perhaps so. My last comment, as we run out of time, is this. I think that there is most assuredly a place in the law and in the analysis for purposes of granting a motion for summary judgment to look to reasonable expectations and common sense. And I believe that that should be done here. And I think if it is, in light of the unique facts and circumstances of this case, all we're asking for is that there's an opportunity to fully flesh out this case. It may end up in the same result, a trial, but it should have the opportunity to have a trial on the merits where all this can be fully fleshed out. What damages would you anticipate seeking at trial if you got that far, given amount? Actually, I do not. I have to say, because I'm so new to the case, I do not know the exact amount. And I know that it is significantly above the $30,000 that was resolved in the 998 and the other case. Thank you, counsel. Thank you. Thank you both for your arguments. It's been very enlightening. And we will be in recess for the morning.
judges: Canby, Thomas, Conlon